**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harry E. CLAIBORNE,
Defendant-Appellant.**

**Harry E. CLAIBORNE, Petitioner,**

v.

**Warren E. BURGER, et al.,
Respondents.**

**In the Matter of Harry E.
CLAIBORNE, Petitioner.**

**Nos. 86–2018, 86–7267 and 86–8089.**

United States Court of Appeals,
Ninth Circuit.

May 14, 1986.

Supplemental Order May 15, 1986.

Dissenting Opinion (by Kozinski, Circuit Judge) June 6, 1986, Amended June 19 and June 27, 1986.

---

William Hendricks, III, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Oscar B. Goodman, Las Vegas, Nev., for defendant-appellant.

## ORDER

Before FLETCHER, CANBY and BEEZER, Circuit Judges.

Petitioner Harry E. Claiborne has filed petitions for a stay of execution of his sentence directly with this Court. (Nos. 86–7267, 86–8089). He has also filed an appeal from the district court's denial of a stay of execution of his sentence. (No. 86–2018). The district court has pending petitioner's motion to vacate his conviction, filed pursuant to 28 U.S.C. § 2255 (D.Nev. No. CR–R–83–57).

▮ Having heard argument of counsel, this Court denies the stays requested directly from this court and affirms the district court's denial of stay. A stay of execution of sentence after appeals are exhausted is reserved for extraordinary cases. We conclude that Petitioner's likelihood of success, including success on his primary contention that a judge cannot be imprisoned prior to impeachment and removal, is not great. *See United States v. Claiborne,* 727 F.2d 842, 845–49 (9th Cir. 1984); *United States v. Claiborne,* 765 F.2d 784, 789–90 (9th Cir.1985). Nor do the other relevant considerations constitute the extraordinary circumstances required for a stay.

Stays DENIED. District court's denial of stay AFFIRMED.

FLETCHER, Circuit Judge, dissents.

FLETCHER, Circuit Judge:

I respectfully dissent. Whether a federal judge can be imprisoned prior to being impeached and convicted is a constitutional question on which no federal court has ruled. No sitting Article III judge has ever been imprisoned. Judge Claiborne raises substantial issues regarding separation of powers and the capacity of the executive branch effectively to deprive a federal judge of his office. Further, Judge Claiborne's § 2255 motion filed in district court makes grave allegations of serious government misconduct that are supported by specific and detailed affidavits. This is an extraordinary case and extraordinary circumstances that justify a stay exist. I would stay execution of Judge Claiborne's sentence pending resolution of these matters.

### SUPPLEMENTAL ORDER

Before FLETCHER, CANBY and BEEZER, Circuit Judges.

An active judge of this court called for an *en banc* vote on the order denying the stays. A majority of the nonrecused active judges of this court have voted not to overrule the order. The order denying the stays entered May 14, 1986 stands as entered.

KOZINSKI, Circuit Judge, with whom Circuit Judges PREGERSON and FERGUSON join, dissenting.[1]

1. This is a consolidation of three cases. Number 86–7267 is a petition for extraordinary writs against the Chief Justice of the United States, the Chief Judge of this Circuit, and others. The jurisdictional basis for this proceeding is unclear. Number 86–8089 is a petition directly to this court for a stay of execution of the sentence, together with an Emergency En Banc Motion to

Designate a Ninth Circuit Judge. Claiborne cites no jurisdictional basis for such a petition and there appears to be none. Claiborne cites the All Writs Act as a jurisdictional basis for the motion. Neither the petition nor the motion asks for relief from a district court's action and so both are premature.

A case such as this raises difficult and searching questions about our system of justice. On the one hand weighs the need to administer the law fairly and evenhandedly, without regard to the status or wealth of the defendant; on the other is the principle that each case is to be resolved on its merits, giving every litigant's unique claims full and fair consideration. When, for the first time in our history, a sitting federal judge is convicted of a criminal offense and sentenced to prison, the tension between these principles becomes especially difficult—even painful—for his peers, other federal judges who must strike this balance.

If Claiborne's case raised criminal law and procedure questions alone, I would find it difficult to disagree with the panel's decision denying the stay of execution of sentence. It is not clear to me that the panel erred on these points; even if it did, any such error would not merit the extraordinary step of en banc reversal of a motions panel.

But Judge Claiborne's imprisonment raises issues that are far more important, implicating the fundamental structure of our political and legal system. Judge Claiborne argues that his imprisonment conflicts with Article II, section 4 and Article III, section 1 of the Constitution, which provide that a federal judge may be removed from office only through impeachment. He suggests that imprisonment effectively deprives him of his office. This claim has not been previously addressed by this court in any of Judge Claiborne's cases [2] or by any court in any case.

If Judge Claiborne's argument proves to have merit, his incarceration would raise concerns reaching far beyond his individual plight. As a federal judge, his tenure in office, and his independence from unwarranted interference by officials of the other two branches of government, are matters of concern to every citizen. Every day that Judge Claiborne spends in jail may be an affront to our constitutional balance of powers.

It goes without saying that Judge Claiborne's argument that he is immune from imprisonment is counterintuitive. It is fundamental to our system of justice that no one is above the law and that the guilty should be punished. Yet these principles are not absolute. For example, Article I, section 6 of the Constitution gives Senators and Representatives immunity "for any Speech or Debate in either House." And, on occasion, the prejudicial effect of evidence obtained in violation of a defendant's constitutional rights is so serious that a conviction must be overturned. These results, and numerous others like them, may offend our sense of justice, but they are thought to serve a purpose higher than the exigencies of a particular case. The last two centuries of constitutional adjudication should have taught us that intuition is no substitute for legal reasoning and results that at first appear counterintuitive, perhaps even offensive, may nevertheless be compelled. It may be that when all is said and done Judge Claiborne's claim will be sustained. At this stage, in the haste inherent in the stay process, without a thorough briefing of the constitutional issues,

---

Number 86–2018 was a different matter. It is an appeal from the district court's denial of Claiborne's petition for a stay of execution of the sentence. This denial was appealable, and it is only the panel's affirmance of the district court's decision to which I am objecting.

**2.** In a pretrial motion, Judge Claiborne argued that prosecution of a federal judge without prior impeachment violates Articles I and III as well as the doctrine of separation of powers. This Court upheld the district court's denial of that motion in *United States v. Claiborne*, 727 F.2d 842 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984), holding that the Constitution does not confer immunity from criminal prosecution. *Id.* at 845–48. The court did not, however, deal with the question of whether incarceration constitutes removal from office. Judge Claiborne subsequently appealed

his conviction. In *United States v. Claiborne*, 765 F.2d 784 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986), the court held that the issue of prosecutability had been addressed in the previous decision and declined to reexamine the question. 765 F.2d at 789.

In affirming denial of the stay, the panel cited these two cases, which dealt with whether Claiborne could be *prosecuted*, concluding that Claiborne could likely be *imprisoned*. Since prosecution does not remove Claiborne from the District of Nevada or necessarily interfere with performance of judicial function, while imprisonment does, I do not think the issues are identical.

without even an opinion from the district court, it is impossible to tell.[3]

The event sought to be stayed is unprecedented. A judge of the United States is to surrender to the custody of the Attorney General, an officer of the executive branch; he will be confined outside his district, disenabled from performing judicial functions. Whatever the merits of the underlying controversy, it is difficult to deny that this creates a constitutional conflict, a collision between two branches of our government. While such confrontations are inevitable from time to time, they must be handled with care and sensitivity to avoid disturbing our system of checks and balances. Accommodation of the conflicting interests may call for punishing Judge Claiborne by means other than imprisonment, or tailoring any prison sentence to permit him to perform some judicial functions.[4]

Putting Judge Claiborne in prison before a panel of this court has had a chance to deliberate on the appropriate resolution of this issue does not, in my view, reflect the restraint due under these circumstances. If Judge Claiborne's claim is sustained, the issuance of a stay would avoid irreparable damage to our tripartite system of government; if his claim is eventually rejected, the cost is only a brief delay in service of the sentence. There is no risk of flight or fear that Judge Claiborne would escape whatever punishment is ultimately found to be lawful and appropriate. By denying the stay, the court is taking a small but serious risk of doing violence to the Constitution. Given the inconsequential cost occasioned by a brief delay in execution of the sentence, it is a risk we should be anxious to avoid.

---

**3.** At least one respected circuit judge has concluded that "the Constitution must be interpreted to designate impeachment as the *exclusive* mechanism for disciplining or removing federal judges." *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093, 1107 (D.C.Cir.1985) (Edwards, J. concurring) (emphasis original). There is considerable support for this position among commentators. *See* Kurland, *The Constitution and the Tenure of the Federal Judges: Some Notes From History,* 36 U.Chi.L.Rev. 665 (1969) (contending that impeachment is the *only* constitutional means of removal); Ziskind, *Judicial Tenure in the American Constitution: English and American Precedents,* 1969 Sup.Ct.Rev. 135; *but see* R. Berger, *Impeachment* 122–80 (1973) (arguing that the judiciary may constitu-

tionally remove judges from office, using Article III's good behavior standard as a measure).

**4.** The spectacle of a federal judge serving jailtime between sittings is not materially more grotesque than having a judge resume judicial duties after serving a prison sentence. Our sense of discomfort with either of these scenarios stems from the fact that Congress has not chosen to remove Judge Claiborne through the impeachment process.

